IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

CHARLES J. C.,[1]  )
                   )
       Plaintiff,  )
                   )
vs.                )  Civil No. 18-cv-1392-DGW[2]
                   )
COMMISSIONER OF SOCIAL )
SECURITY,          )
                   )
       Defendant.  )

## **MEMORANDUM and ORDER**

**WILKERSON, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff seeks judicial review of the final agency decision denying his application for Supplemental Security Income (SSI) benefits pursuant to 42 U.S.C. § 423.

## **Procedural History**

Plaintiff applied for SSI in July 2014, alleging a disability onset date of February 7, 2014. The alleged onset date was the date on which a prior application had been denied. After holding an evidentiary hearing, ALJ Joseph L. Heimann denied the application on October 4, 2017. (Tr. 31-40). The Appeals Council denied plaintiff's request for review, rendering the ALJ's decision the final

---

[1] Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. See, Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

[2] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c). See, Docs. 10, 25.

1

agency decision. (Tr. 2). Plaintiff exhausted his administrative remedies and filed a timely complaint with this Court.

## Issue Raised by Plaintiff

Plaintiff raises the following points:

1. The ALJ failed to fully develop the record.

2. The ALJ ignored relevant medical evidence and failed to consider the combined effect of all of plaintiff's impairments.

## Applicable Legal Standards

To qualify for SSI, a claimant must be disabled within the meaning of the applicable statutes.[3] Under the Social Security Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). To determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform

---

[3] The statutes and regulations pertaining to DIB are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. As is relevant to this case, the DIB and SSI statutes and regulations are identical. Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

his former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 404.1520.

An affirmative answer at either step 3 or step 5 leads to a finding that the plaintiff is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any step, other than at step 3, precludes a finding of disability. *Id*. The plaintiff bears the burden of proof at steps 1–4. *Id*. Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Id*.

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. It is important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). This Court uses the Supreme Court's definition of substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 2019 WL 1428885, at *3 (S. Ct. Apr. 1, 2019) (internal citations omitted).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Murphy v. Colvin,* 759 F.3d 811, 815 (7th Cir. 2014). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

## **The Decision of the ALJ**

ALJ Heimann followed the five-step analytical framework described above. He determined that plaintiff had not worked since the application date. The ALJ found that plaintiff had severe impairments of obstructive sleep apnea, obesity, hypertension, lumbar degenerative disc disease, and asthma, which did not meet or equal a listed impairment.

The ALJ found that plaintiff had the residual functional capacity (RFC) to do work at the light exertional level, limited to no climbing of ladders, ropes or scaffolds; occasional stooping, kneeling, crouching, and crawling; no exposure to concentrated levels of pulmonary irritants; and occasional exposure to operational control of moving machinery, unprotected heights, and the use of hazardous machinery

The ALJ found that plaintiff had no past relevant work. Based on the testimony of a vocational expert, the ALJ found that plaintiff was not disabled

4

because he was able to do jobs that exist in significant numbers in the national economy.

## The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the points raised by plaintiff.

1.   **Agency Forms**

Plaintiff was born in 1971 and was 42 years old on application date. (Tr. 219). He said he was 5'8" tall and weighed 315 pounds. He had been in special education classes in school. He had worked off and on at jobs such as assembly line worker through a temp agency, fast food restaurant cook, and laborer. (Tr. 223-224).

Plaintiff submitted a Recent Medical Treatment form in June 2017. He said he had been seen by Drs. Mohsin and Ampadu, who practiced together. He said he had chronic back pain, a heel spur, asthma, and hypertension. He had been seen at Memorial Hospital for chest pain and had undergone a stress test and a CT scan. (Tr. 358).

2.   **Evidentiary Hearing**

Plaintiff was represented by an attorney at the evidentiary hearing in June 2017. The attorney was in California and attended the hearing by telephone. Plaintiff said he was surprised that the attorney was not there in person. The attorney stated that they had spoken by phone the day before, and he had explained

to plaintiff that he would be appearing by phone. The ALJ offered plaintiff the opportunity to speak privately with his attorney, and stated that, if plaintiff did not want to proceed with the attorney not there in person, he should inform the ALJ. Plaintiff said, "We can just go ahead with it." (Tr. 48-50).

Plaintiff was homeless and was staying for a few months at his sister's house. (Tr. 52).

Plaintiff testified that he was unable to work because he could not lift anything and could not walk. His feet and his spinal cord were "killing" him. Pain interfered with his sleep. He used a CPAP machine sometimes. He used an inhaler every other day for asthma. He also did an Albuterol breathing treatment every night. (Tr. 58-62).

Plaintiff had been on Medicaid since around 2009. (Tr. 63).

His back pain was treated with Vicodin and "nerve pills." He was treated by Drs. Mohsin and Ampadu, who were in the same building. Plaintiff said he had seen them in 2017. The ALJ stated that he only had records from them from a couple of years ago. Plaintiff testified that he had a lumbar MRI, ordered by Dr. Mohsin, that showed he had arthritis. (Tr. 64-65). Plaintiff said the MRI was done 4 or 5 weeks prior to the hearing. The ALJ said he did not have the MRI report, and plaintiff's counsel said he had not seen it either. Plaintiff said he had been back to the doctor and talked to him about the MRI. The ALJ said he would get Dr. Ampadu's recent records. (Tr. 68-70).

A vocational expert (VE) also testified. The ALJ asked her a hypothetical question which corresponded to the RFC assessment. The VE testified that this person could do jobs that exist in the national economy. (Tr. 76-77).

### 3. Relevant Medical Records

In March 2014, plaintiff saw Dr. Ampadu for fluid on his ankle, back pain, asthma, and hypertension. He prescribed medication and referred plaintiff for a sleep study. (Tr. 398).

In April 2014, a sleep study done by Dr. Jamous showed that plaintiff had sleep apnea. On exam, he had normal percussion and diffuse wheezes bilaterally on auscultation. He was prescribed a CPAP machine. The mask was taken away from him for noncompliance. In September 2014, examination by Dr. Jamous showed his chest had normal anatomy, percussion and auscultation. He returned to Dr. Jamous for another sleep study in October 2014. The doctor again recommended a CPAP machine, and a CPAP titration study was done in December 2014. (Tr. 453-459).

Plaintiff saw Dr. Mohsin for sinus congestion and wheezing in October 2014. He had asthma and wanted a refill of his medications. On exam, he had diffuse end-expiratory wheezing. Dr. Mohsin diagnosed acute sinusitis and bronchial asthma. About three weeks later, he complained to Dr. Mohsin of lumbar pain. Dr. Mohsin ordered x-rays and prescribed Tramadol. (Tr. 415). X-rays of the lumbar spine showed minimal osteoarthritic changes. There were no erosive changes, pathologic lesions, or acute process seen. (Tr. 450).

Dr. Adrian Feinerman performed a consultative exam in November 2014. Plaintiff complained of low back pain for the past 12 years. He said he had shortness of breath since childhood and had been diagnosed with asthma. His shortness of breath was worsened with activity and got better with use of an inhaler. He was 5'7" and weighed 276 pounds. On exam, his lungs were clear to auscultation and percussion with no wheezes, rales, or rhonchi. There was no increase in AP diameter. Range of motion of the lumbar spine was limited. Range of motion of both ankles was normal. Straight leg raising was negative. Ambulation was normal. He had moderate difficulty standing on toes and heels and mild difficulty getting on and off the examining table, arising from a chair, and tandem walking. The assessment was possible lumbar disc disease and hypertension. (Tr. 418-427).

The next medical record is from August 2016. Plaintiff was seen by Dr. Ampadu. He reported that he had been in the emergency room recently for chest pain. He complained of chronic back pain. He denied shortness of breath. Dr. Ampadu prescribed Norco for back pain. (Tr. 485-486).

Plaintiff returned to Dr. Ampadu in October 2016, complaining of pain in his left Achilles tendon for a year and low back pain. A month later, Dr. Ampadu noted that an x-ray showed a 7 mm osteophyte at the Achilles insertion. X-rays of the lumbar spine showed mild degenerative joint disease, unchanged since 2014. On exam, he had a few rhonchi and wheezes. He had tenderness to palpation of

the left Achilles, and tenderness from L3 to S1. He was referred to podiatry. (Tr. 487-491).

In February 2017, plaintiff reported to Dr. Ampadu that he had seen the podiatrist, Dr. Brown, and that x-rays showed arthritis. There is no record of this visit with Dr. Brown in the transcript. Plaintiff returned to Dr. Ampadu in March 2017 after a "ground level fall" caused by tripping. He denied trouble ambulating. He complained of generalized aches. Exam showed tenderness in the low back and sacroiliac joint. He was to continue his current medications, including Hydrocodone. (Tr. 497-503).

Dr. Brown, a podiatrist, saw plaintiff in April 2017. Plaintiff complained of left heel pain and tingling with numbness in both feet. On exam, he had nonpitting edema of both feet and decreased sensation in both feet. The assessment was atherosclerosis of native arteries of legs with intermittent claudication, spur on the left heel, metatarsalgia in the left foot, and pain in both feet. (Tr. 471).

The next medical record is a visit with Dr. Ampadu in August 2017. The review of medications indicates that an asthma medication was changed in May 2017, but there is no contemporaneous record of that medication change. The purpose of the visit was follow-up for depression, low back pain, asthma, hypertension, heel spur and difficulty walking. Plaintiff complained of severe low back pain and difficulty walking and sitting. There are no notes regarding findings on exam. The assessment was low back pain, sleep apnea, asthma, hypertension

and "bone spur right [sic] foot." Plaintiff was referred to an orthopedist for the last problem. (Tr. 505-507).

## Analysis

Plaintiff's second point is well-taken in that the ALJ ignored evidence related to his left foot pain and failed to consider the combined effect of all his impairments.

The ALJ concluded that plaintiff's calcaneal spur was not a severe impairment because there was "no objective evidence that this condition will significantly limited [sic] his ability to perform work-related activities for at least 12 months." (Tr. 33). The ALJ then discussed the medical evidence. He said that plaintiff first complained about his lower extremity in October 2016, "but nothing about his lower extremity was noted upon physical examination…." This is incorrect. Dr. Ampadu noted "left [A]chilles tendon tenderness" at the October 2016 visit. The next month, an x-ray revealed a 7 mm osteophyte at the Achilles insertion. Dr. Ampadu found tenderness to palpation of the left Achilles. (Tr. 488-490). The ALJ failed to mention this x-ray or the doctor's findings. He remarked that plaintiff denied difficulty ambulating at a visit after he fell in March 2017. However, the ALJ ignored the fact that plaintiff complained of difficulty walking in August 2017, and the fact that Dr. Ampadu referred him to an orthopedic specialist for the calcaneal spur. (Tr. 506-507).

In addition, the ALJ characterized the podiatrist's findings as "some relatively minor abnormalities of his foot with assessments that included calcaneal

spur." (Tr. 33). Dr. Brown's exam revealed nonpitting edema of both feet and decreased sensation in both feet. The assessment was atherosclerosis of native arteries of legs with intermittent claudication, spur on the left heel, metatarsalgia in the left foot, and pain in both feet. (Tr. 471). The ALJ's characterization was an understatement, to say the least.

The Seventh Circuit has "repeatedly held that although an ALJ does not need to discuss every piece of evidence in the record, the ALJ may not analyze only the evidence supporting her ultimate conclusion while ignoring the evidence that undermines it." *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014). That is what the ALJ did here.

This failure to fairly consider all the relevant medical evidence is coupled with a failure to consider the combined effects of all of plaintiff's impairments. "When assessing if a claimant is disabled, an ALJ must account for the combined effects of the claimant's impairments, including those that are not themselves severe enough to support a disability claim." *Spicher v. Berryhill*, 898 F.3d 754, 759 (7th Cir. 2018). Regardless of whether plaintiff's foot problems, which include a spur and arthritis, constitute a severe impairment, the ALJ was required to consider them in combination with his other impairments in assessing his RFC.

The ALJ's errors require remand. Therefore, it is not necessary to decide plaintiff's first point. All relevant evidence should be obtained and considered on remand.

The Court must conclude that ALJ Heimann failed to build the requisite logical bridge between the evidence and his conclusion. Remand is required where, as here, the decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012).

The Court wishes to stress that this Memorandum and Order should not be construed as an indication that the Court believes that plaintiff is disabled or that he should be awarded benefits. On the contrary, the Court has not formed any opinions in that regard and leaves those issues to be determined by the Commissioner after further proceedings.

## Conclusion

The Commissioner's final decision denying plaintiff's application for social security disability benefits is **REVERSED** and **REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of 42 U.S.C. §405(g).

The Clerk of Court is directed to enter judgment in favor of plaintiff.

**IT IS SO ORDERED.**

DATE:    April 26, 2019.

Donald Wilkerson

**DONALD G. WILKERSON**
**UNITED STATES MAGISTRATE JUDGE**